## McCrory v. Luisi

*Charles E. McKissock,* for plaintiff.
*Jerry B. Landis,* for defendant.
*Edward L. Kochuba Jr.,* for additional defendant.

WETTICK, *A.J.,* June 13, 1989 — This is a lawsuit to recover damages for defendant's breach of an agreement to purchase residential property from plaintiffs. After signing the sales agreement but prior to the closing, defendant informed plaintiffs that she was rescinding the agreement because plaintiffs' real estate agent had misrepresented the racial composition of the neighborhood in which the property was located. This alleged misrepresentation is defendant's only defense to this action.

Defendant has filed a complaint joining plaintiffs' real estate broker as an additional defendant. The basis for the joinder is that prior to executing the sales agreement, defendant asked the agent of the real estate broker whether the neighborhood surrounding the property was predominately white or predominately black and the agent responded that the neighborhood was predominantly white. Defendant alleges that this was a misrepresentation of an existing fact, that she was induced to execute the agreement of sale in reliance on this misrepresentation, that she would not have executed the agreement but for this representation, that the agent knew that the representation was false, and that he anticipated that defendant would rely on this representation.

The additional defendant has filed a preliminary objection in the nature of a demurrer to the complaint that is the subject of this opinion and order of court.

I

The activities upon which defendant's complaint against the additional defendant is based are illegal.

While a purchaser may discriminate on the basis of race in determining locations in which he or she wishes to purchase property, the law prohibits the purchaser from seeking the assistance of a real estate broker or a real estate agent in determining whether the racial makeup of a neighborhood conforms to the desires of the purchaser. It also prohibits a real estate broker or agent from providing such assistance.

Under subsection h(6) of section 5 of the Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §955(h)(6)) it was illegal for defendant to contact the real estate agent and "[m]ake any inquiry [or] elicit any information . . . concerning race [or] color" in connection with this transaction involving the sale of residential property. Under the provisions of the Human Relations Act and legislation governing real estate brokers and agents, it was illegal for the real estate agent to furnish information concerning the the racial makeup of the neighborhood. See, e.g., section 5.3 of the Pennsylvania Human Relations Act (43 P.S. §955.3); section 604 of the Real Estate Licensing and Registration Act (63 P.S. §455.604).

Because of her wrongdoing, defendant is barred from maintaining this action against the additional defendant under the principle developed at common law that a court will not lend its aid to an action grounded upon immoral or illegal conduct. The

scope and applicability of this principle was recently reviewed by the Pennsylvania Superior Court in *Feld and Sons Inc. v. Pechner Dorfman, Wolfee, Rounick and Cabot*, 312 Pa. Super. 125, 458 A.2d 545 (1983). In that case plaintiffs included individuals who had been criminally convicted for providing perjured testimony in proceedings before the National Labor Relations Board and offering a bribe to a potential witness. In this lawsuit they sued the lawyers who represented them in the NLRB proceeding. The basis of this suit was that their lawyers had advised them to furnish perjured testimony and to offer the bribe. They sought compensatory and punitive damages for professional malpractice, infliction of emotional distress, deceit and breach of contract. The lower court sustained defendants' preliminary objections in the nature of a demurrer because the damages that plaintiffs sustained resulted from plaintiffs' illegal conduct. The Superior Court upheld the lower court ruling as to plaintiff's claims for compensatory and punitive damages. The court relied on and expanded the common-law rule that a court shall not lend its aid to a person who grounds his action upon immoral or illegal action.

The common-law rule was subject to a qualification that the parties' degrees of guilt be comparable. The *Feld and Sons* opinion eliminated this qualification. It concluded that courts should not be involved in weighing and evaluating degrees of fault and wrongdoing but, instead, should in all cases adhere to the general principle that a court not provide relief to persons whose claims are grounded on immoral or illegal acts.

The *Feld and Sons* opinion created one exception to this general rule. It permitted plaintiffs to maintain an action to recover the illegal fees paid to

defendants. The reason for this exception is that the law imposes on an attorney a higher responsibilty for acting in a moral and legal manner in legal proceedings. Consequently, attorneys should not be permitted to benefit financially from their illegal conduct even if this means that court action will benefit clients who have also acted immorally and illegally,

This exception has no applicability to the present case for two reasons. First, it appears that this exception is limited to claims against attorneys who engage in wrongdoing because of an attorney's unique status as a public officer sworn to aid in the administration of justice and to act with fidelity to the court. Second, defendant is not seeking to recover commissions paid to additional defendant.

II

Defendant's claim is also barred by the Equal Protection Clause of the Fourteenth Amendment.

We recognize that additional defendant cannot show that this court's consideration of defendant's misrepresentation claim would infringe upon any rights which additional defendant has under the Equal Protection Clause. However, a court is foreclosed from creating a body of law that violates the principles of the Equal Protection Clause in litigation that will not adversely affect the equal protection rights of any party to litigation. See *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031 (1953).

Pennsylvania law does not provide relief for every misrepresentation. Defendant can recover only if the misrepresentation concerning the racial makeup of the neighborhood is material. The misrepresentation would be material only if the law permits a finding that property located in a predominately white neighborhood is more desirable than property located in a

predominately black neighborhood.[1] The only basis for such a finding is that in this society the white race is more desirable than the black race. The Fouteenth Amendment bars a state from creating a body of law based on racial supremacy. *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686 (1954).

Also while a state may be neutral on the issue of private racial discrimination, it may not become a partner with a private party who seeks to discriminate. The involvement of the Pennsylvania courts in developing a definition of a "predominately white neighborhood," in permitting its machinery to be used to resolve the factual issue of whether the property is located in a predominately white or a predominately black neighborhood and in devising a remedy in the event that misrepresentation is proven constitutes impermissible state action.

Pennsylvania is not permitted under the Fourteenth Amendment to develop a color code that determines who is a member of a preferred race and who is a member of a non-preferred race.[2] Yet it is highly unlikely that this case could be resolved

1. In some situations a representation that ordinarily would not be material may be material for a particular buyer. For example, a false representation that a Catholic Church is located within walking distance of a house, while not ordinarily material, would be material to a buyer who attended Catholic services each day and had no automobile. But in the present case defendant's interests do not differ from those of other purchasers so the question for the trier of fact would be whether it would make a material difference to the ordinary buyer that the property was located in a predominantly black rather than a predominantly white neighborhood.

2. Affirmative action programs have avoided creating restrictive color codes either by permitting persons simply to declare that they are minorities or by including within the definition of minority any one who claims that he or she has any ancestors who were members of a minority.

without jury instructions as to how to classify persons who are neither one hundred percent "white" nor one hundred percent "black." (We note that in *Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138 (1896), which first upheld the doctrine of separate but equal, Plessy's first contention was that he was seven-eighths Caucasian and one-eighth African, that the mixture of colored blood in him was not discernible, and, therefore, that he was entitled to the rights, privileges and immunities secured to citizens of the white race.)

Also it is highly likely that residents of the neighborhood could become involved involuntarily in this lawsuit through discovery. Unless they affirmatively seek protective orders, they can be compelled under threat of judicial sanction to provide information concerning their race and the race of other residents of their neighborhood.

Cases which support this court's position that Pennsylvania would no longer be neutral on the issue of private racial discrimination if it permitted a finding that the alleged misrepresentation of the real estate agent is material, if it provided a remedy for this misrepresentation, if it permitted its judicial machinery to be used to decide the factual issues raised by the misrepresentation claim and if it devised a legal framework for deciding the racial composition of the neighborhood include *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627 (1967); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856 (1961), and *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836 (1948).

For these reasons we enter the following

## ORDER OF COURT

On this June 13, 1989, it is hereby ordered that additional defendant's preliminary objections in the

nature of a demurrer are sustained and that defendant's complaint is dismissed. The arbitration hearing on plaintiffs' claim against defendant shall be heard on September 21, 1989 at 9 a.m.